# Frankel Syverson pllc

FRANKEL SYVERSON PLLC
2375 E. Camelback Road, Suite 600
Phoenix, Arizona 85016
602-598-4000
Ty D. Frankel (027179)
ty@frankelsyverson.com

9655 Granite Ridge Drive, Suite 200
San Diego, California 92123
602-598-4000
Patricia N. Syverson (020191)
patti@frankelsyverson.com

*Attorneys for Plaintiff and the Class*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Jose A. Vega, on behalf of himself and all those similarly situated,<br><br>             Plaintiff,<br><br>      v.<br><br>All My Sons Business Development, LLC, a Delaware limited liability company; All My Sons Moving & Storage of Tucson LLC, a Delaware limited liability company; All My Sons Moving & Storage of Phoenix LLC, a Delaware limited liability company,<br><br>             Defendants. | Case No. 4:20-cv-00284-RCC<br><br><br>**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF FLSA COLLECTIVE ACTION AND RULE 23 CLASS ACTION SETTLEMENT AND SUPPORTING MEMORANDUM** |

Plaintiff Jose Vega, individually, and on behalf of the FLSA Opt-in Plaintiffs and the 430 Rule 23 Class members (collectively "Plaintiff"), respectfully submits the following Unopposed Motion for Preliminary Approval of FLSA Collective Action and Rule 23 Class Action Settlement and moves for an Order provisionally: (1) approving the Settlement reached with AMS[1] as being fair, reasonable, and adequate; (2) approving the service award proposed for Vega; (3) approving the proposed Rule 23 Notice Plan; (4) setting the date and time of the Fairness Hearing; (5) certifying the Rule 23 Settlement Class for settlement purposes; (6) appointing Plaintiff Vega as representative of the Settlement Class; and (7) appointing Ty Frankel and Patricia Syverson of Frankel Syverson PLLC, as "Class Counsel."[2]  Plaintiff Vega's motion for preliminary approval is unopposed by AMS.[3]

## MEMORANDUM OF LAW

## I.    INTRODUCTION

Plaintiff Vega and AMS (collectively the "Parties") have entered into a Settlement Agreement on behalf of all the Tucson AMS Helpers employed during the relevant period. *See generally* Settlement Agreement (**Exhibit 1**).  Although both sides believe their respective positions are meritorious, Plaintiff has concluded that, due to the uncertainties and expense of protracted litigation, it is in the best interest of himself and all the Helpers to resolve this action on the terms provided in the Settlement Agreement.  Pursuant to the proposed Settlement, AMS has agreed to pay a total of $150,000, which will be available to

---

[1] "AMS" and "Defendants" collectively refer to the following entities: All My Sons Business Development, LLC, All My Sons Moving & Storage of Tucson LLC, All My Sons Moving & Storage of Phoenix LLC, and their respective affiliates, subsidiaries, successors, assigns, executives, and owners.

[2] Plaintiff's Counsel was approved as "Class Counsel" while with the firm of Yen Pilch Robaina & Kresin PLC.  *See Vega v. All My Sons Bus. Dev. LLC*, 2022 WL 684380 (D. Ariz. Mar. 8, 2022); Doc. 136, Order dated 3-20-22 (Unpaid Wages Class). Effective August 1, 2023, Plaintiff's Counsel are now with the law firm of Frankel Syverson PLLC and have continued as attorneys of record in this case (Doc. 166).  As such, Plaintiff seeks to have Ty Frankel and Patricia Syverson of Frankel Syverson PLLC approved as Class Counsel.  *See* Settlement Agreement, at II(C). To the extent the proposed notices and orders attached to the Settlement Agreement reference Plaintiff's Counsel's prior firm (Yen Pilch Robaina & Kresin PLC), Class Counsel will update those firm references prior to the documents being finalized for use.

[3] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Settlement Agreement. To the extent there is any conflict between the definitions of those terms, the definitions in the Settlement Agreement will control.

compensate Vega and the over 430 Class Members for their claims of unpaid wages, including unpaid overtime, straight time and minimum wage, as well as provide a service award to Vega and payment to a third-party administrator for all administration costs.  The Settlement Agreement also provides that AMS will pay an Attorneys' Fee Award and Costs in an amount to be determined separately by the Court.  The Parties believe that the proposed Settlement is fair, reasonable, and adequate and that both the FLSA Settlement Class and the Rule 23 Settlement Class should be preliminarily approved for the reasons set forth in this Motion.  AMS does not oppose Plaintiff Vega's Motion.

## II.     BACKGROUND AND PROCEDURAL HISTORY

On July 2, 2020, Plaintiff Vega filed this collective action under the Fair Labor Standards Act ("FLSA") and this class action under the Federal Rules of Civil Procedure Rule 23 ("Rule 23) for violations of Arizona state law on behalf of himself and other similarly situated Helpers.  Vega alleged that AMS's policies and practices of requiring the Helpers to work a significant number of hours both before and after being clocked in/out at a customer's site without compensation is a clear violation of the FLSA and Arizona Wage Statutes.  Through this action, Plaintiff Vega sought to recover all unpaid wages, including straight time, overtime and minimum wages, the Helpers have earned but not been paid.  *See* Complaint.  On February 1, 2022, the Court granted conditional certification of a collective under the FLSA on behalf of himself and other similarly situated AMS Helpers in Tucson, Arizona.  *See Vega v. All My Sons Bus. Dev. LLC*, 583 F.Supp.3d 1244 (D. Ariz. 2022).  In addition, the Court simultaneously certified a Rule 23(b)(3) class of Helpers seeking payment for failure to timely pay wages, including straight time, overtime when owed and minimum wages, pursuant to A.R.S. § 23-350 *et seq.* and unpaid minimum wage pursuant to A.R.S. 23-363 *et seq.*

## III.    SETTLEMENT

### A.     Settlement Negotiations

After preliminary informal settlement talks, the Parties attended a formal full-day mediation session with professional mediator, Joseph Dixon, on December 20, 2022.

Plaintiff Vega attended on behalf of himself and as the representative of all the Helpers. Ultimately, the mediation was unsuccessful.  Following the mediation, the Parties continued to litigate this case, including responding to Requests for Production, Interrogatories and Requests for Admission propounded on all of the Opt-In Plaintiffs.  In light of the pending pre-trial schedule, the Parties believed it would be appropriate to attempt to mediate once more and on May 5, 2023, attended a second full-day Settlement Conference, this time before Magistrate Judge Bruce G. Macdonald.  During the second session, the Parties reached a settlement in principle and over the next three months worked to formalize the agreement. Finally, on August 14, 2023, the Parties executed the final Settlement discussed in this Motion for which unopposed approval is now sought.

## B.    Settlement Terms

The proposed Settlement resolves all claims asserted by Plaintiff, the FLSA Opt-in Plaintiffs, and the Rule 23 Class Members, and all claims that could have been asserted by them in this action against AMS and was crafted at arm's length by experienced counsel on both sides following three years of litigation.  As a direct result of this litigation and the settlement negotiations, AMS has agreed to a Settlement that provides a total of $150,000, including approximately $127,000 to compensate Vega and the FLSA Opt-In Plaintiffs and Rule 23 Class Members for their alleged overtime and unpaid wage compensation claims pursuant to the FLSA, AWA and AMWA.  Importantly, this amount will not be reduced by attorneys' fees or costs because AMS has separately agreed to pay for Plaintiff's Attorneys' Fee Award and Costs, in an amount to be determined by the Court pursuant to Plaintiff's separate application.  The relief obtained for Vega, the FLSA Opt-in Plaintiffs, and the Rule 23 Class Members represents a recovery that satisfies all criteria for fairness, reasonableness, and adequacy under the FLSA, Rule 23, and Ninth Circuit law.  The specific terms of the Settlement are as follows:

## 1.    Compensation for Unpaid Wages

The Settlement provides up to $127,000 to settle the overtime claims of the FLSA Opt-In Plaintiffs as well as the unpaid wages and minimum wage claims of the Rule 23 Class

Members.  For each of the Helpers, the funds have been allocated fairly according to the hours allegedly worked and amounts earned during the relevant period of time.  The amount of each individual's recovery was calculated utilizing an aggregation of information obtained from Vega, each FLSA Opt-In Plaintiff, including their responses to written discovery requests and deposition testimony, and the Rule 23 Class Members, as well as AMS's records, to determine the amount of time they allege to have worked.  The individual settlement amounts to Vega and the Helpers range from $36.15 to $5,305.75, depending upon the amount of time each individual Helper worked during the relevant period of time and the specific claims they were eligible for.  *See* Settlement Agreement, at IV(A) and Exhibit E.[4]  The final agreed upon amounts for the Helpers were calculated on a *pro rata* basis with each of the Helpers receiving approximately 20-40% of the unpaid wage damages owed, in light of weighing the risks of continued litigation.  *See* Settlement Agreement, at IV(A) and Exhibit E.[5]

## 2.   Plaintiff's Service Award

The Parties have agreed that Plaintiff Vega will receive a service award of $10,000 as compensation for bringing this case, serving as the FLSA Opt-In and Rule 23 Class Members' representative, providing documents and deposition testimony, actively monitoring and assisting his counsel in litigating this case, and participating in-person in two full-day, mediation sessions that helped facilitate the resolution of this case.  *See* Settlement Agreement, at IV(B).  This service award will be paid separate and apart from, and will not diminish, the payment of claims to the other Helpers.  Such service awards are appropriate and routinely approved in FLSA and Rule 23 actions.  *See* Section VIII, below.

## 3.   Notice and Administrative Costs

The Parties have agreed to engage a third-party administrator for purposes of, *inter*

---

[4] Pursuant to the terms of the Settlement Agreement, the Parties are concurrently filing a Motion to Seal Exhibit E.  *See* Settlement Agreement, at IV(A).

[5] Each of the FLSA Opt-In Plaintiffs (including Plaintiff Vega) are also encompassed within the Rule 23 Settlement Class.  For ease of allocation, each of the FLSA Opt-In Plaintiffs only appears once in Exhibit E to the Settlement Agreement.  The damages chart reflects both an amount for FLSA damages (if applicable) and an amount for Rule 23 damages.

*alia*: providing the Notice and Information Form in the forms agreed to by the Parties (and approved by the Court) to Class members; taking reasonable efforts to locate and re-send the Notice and Information Forms in the event they are returned for insufficient addresses; collecting, reviewing and tracking all responses received; issuing and tracking all settlement payments paid to Class Members; and routinely updating Class Counsel and Defense on all aspects of the Settlement Administration.  *See* Settlement Agreement, at IV(C).  Simpluris Inc., a widely recognized reputable third-party claims administrator with extensive experience in the area of employment claims,[6] has been identified as the third-party Settlement Administrator.  Simpluris Inc. will be paid from the Settlement to cover such services in an amount estimated to be $13,000.  *Id*.

### C.    Additional Settlement Provisions

Tax Withholdings:  Each settlement payment will be treated as back wages from AMS and reported on IRS Form W-2.  *See* Settlement Agreement, at V(C).  The Settlement Administrator will calculate and withhold appropriate amounts for Employment Payroll Taxes from each Settlement Payment and submit those amounts to the appropriate taxing authorities.  AMS will be responsible for paying all applicable Employer Payroll Taxes, separate and apart from the Settlement Amount.  *See* Settlement Agreement, at V(C).

*Cy Pres* Distribution:  To the extent any of the approximately $127,000 available to the Class Members is not claimed or that the Court does not approve a service award in the amount of $10,000, any funds remaining after the third-party administrator has been paid in full will not revert to AMS but will be distributed *cy pres* to The National Institute for Workers' Rights.  *See* Settlement Agreement, V(A).[7]

Release Language:  The Settlement provides that the Helpers will only be releasing claims related to the specific class of which they are included.  Specifically, the Settlement provides that FLSA Opt-In Members, including the Named Plaintiff, will be releasing all

---

[6] *See, e.g.,* http://simpluris.com/settlement-administrator-employment-cases.
[7] To the extent the administrative costs exceed the estimated $13,000, Plaintiff requests that any excess amount will be paid from unclaimed monies prior to being distributed to the *cy pres* recipient.

claims for unpaid wages against All My Sons in the Lawsuit brought under the FLSA through the date of entry of the Final Approval Order, which are alleged in Counts I and II of the Collective Action and Class Action Complaint.  *See* Settlement Agreement, VI(A).  And, Rule 23 Class Members, including the Named Plaintiff, who do not opt out of the Settlement will be releasing all claims for unpaid wages against All My Sons in the Lawsuit brought under the Arizona Wage Statute through the date of entry of the Final Approval Order, which are alleged in Counts III and IV of the Collective Action and Class Action Complaint.  *See* Settlement Agreement, VI(B).

## IV.   THE RULE 23 SETTLEMENT CLASS SHOULD BE PROVISIONALLY CERTIFIED

The Ninth Circuit recognizes the propriety of certifying a settlement class to resolve class action lawsuits.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  Here, the provisional certification of the Rule 23 Settlement Class is appropriate because all the requirements of Rule 23 have been met, as the Court previously found in its February 1, 2022 Order certifying the class for litigation purposes.  *See Vega,* 583 F.Supp.3d at 1264-1266.

### A.   The Settlement Class Satisfies Federal Rule of Civil Procedure 23(a)

Rule 23(a) enumerates four prerequisites for class certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy.  Each of these requirements is met for the Settlement Class.

#### 1.   Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a). During the relevant period, approximately 430 Helpers worked for AMS.  *Horton v. USAA Cas. Ins. Co.*, 266 F.R.D. 360, 365 (D. Ariz. 2009) (a proposed class generally satisfies the numerosity requirement if the class has forty or more members); *Brink v. First Credit Res.*, 185 F.R.D. 567, 569 (D. Ariz. 1999).  Thus, as the Court previously found, the numerosity requirement is met.  *See Vega,* 583 F.Supp.3d at 1264-1265.

### 2.   Commonality

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury . . . Their claims must depend upon a common contention . . . [that] is capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Walmart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  The commonality requirement is construed "permissively."  *Hanlon*, 150 F.3d at 1019.

This prerequisite is readily met with respect to the Settlement Class.  Here, it is undisputed that all of the Helpers perform the same job duties, are subject to the same compensation practices, are paid under a common arrangement, and are required to follow the same set of policies, procedures and rules that govern when and how they perform their work.  The key common question in this case is whether those common practices resulted in them working without receiving compensation (or the proper amount of compensation) they had earned.  As the Court found in certifying the Rule 23 Class, "it is All My Sons' uniform treatment of helpers that is the common thread"; "the common question here is whether All My Sons' policies violate state law by failing to timely compensate helpers for overtime and by routinely requiring helpers to perform unpaid work thereby failing to pay them minimum wage."  *See Vega,* 583 F.Supp.3d at 1265.  Thus, for the same reasons, the commonality requirement is met as to the Settlement Class.

### 3.   Typicality

Rule 23(a)(3) typicality is satisfied where the plaintiff's claims are "reasonably co-extensive" with absent class members' claims; they need not be "substantially identical." *Hanlon*, 150 F.3d at 1020; *see also Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010). The Court previously found typicality met here because, as a Helper, Vega's "unpaid wage claims arise from compensation practices that applied to him as they apply to other helpers." *See Vega,* 583 F.Supp.3d at 1264-1265.  Likewise, Plaintiff Vega's claims are typical of the claims of the Settlement Class.

### 4.      Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  In the Ninth Circuit, adequacy is satisfied where: (i) counsel for the class is qualified and competent to vigorously prosecute the action, and (ii) the interests of the proposed class representatives are not antagonistic to the interests of the class.  *See, e.g.*, *Staton v. Boeing*, 327 F.3d 938, 957 (9th Cir. 2003); *Hanlon*, 150 F.3d at 1020.  Here, the Court found adequacy was met because: "There is no evidence that Vega has any conflicts with the other class members, and he has pursued these claims on behalf of all helpers from the outset of this litigation.  Vega has also offered evidence of proposed class counsel's experience litigating class actions."  *See Vega,* 583 F.Supp.3d at 1265; *see also* Order Approving Rule 23 Notice (Doc. 136); *see also* Motion for Approval of Form of Rule 23 Class Notice and Plan for Distribution of Class Notice (Doc. 101), p. 3, n. 1 (experience of counsel).  Since the Rule 23 class was certified, Plaintiff Vega and Class Counsel have continued to demonstrate their adequacy by acting in the best interests of the Class in their efforts to reach a Settlement.  In particular, each of the FLSA Opt-In Plaintiffs consented to have Plaintiff Vega "act as [their] agent and make decisions on my behalf."  *See* Doc. 98-2 (Consent to Opt-In to Collective Action).  In that regard, Plaintiff Vega took an active role in the settlement negotiations throughout the two, full-day, in-person mediation sessions and the months that followed and understood his obligations to represent the best interests of the class.

### B.      The Rule 23 Settlement Class Satisfied Rule 23(b)(3)

Rule 23(b)(3) certification is appropriate "whenever the actual interests of the parties can be served best by settling their difference in a single action."  *Hanlon*, 150 F.3d at 1022 (quotations omitted).  Pursuant to Rule 23(b)(3), "[c]ommon issues predominate when they constitute such a significant aspect of the case that there is a clear justification for handling the dispute on a [class] . . . basis.  The inquiry is designed to determine whether a class action as far more efficient thereby promoting judicial economy."  *Brink*, 185 F.R.D. at 572 (citations and internal quotations omitted).  The predominance requirement is satisfied here

as to the Settlement Class – same as when the Court certified the Rule 23 Class for litigation purposes: "Although predominance is a higher standard than mere commonality, Vega establishes that common questions eclipse any individual question of damages.  Indeed, a single adjudication of whether All My Sons' compensation policies violate state wage laws would resolve a threshold question relevant to all plaintiffs before any individual calculation of damages would become necessary."  *See Vega,* 583 F.Supp.3d at 1265-1266.

Similarly, the superiority requirement of Rule 23(b)(3) is satisfied as to the Settlement Class, just as the Court found it was with regard to the litigation class: "It is both more efficient and more economical to resolve any potential wage claims by helpers against All My Sons in this fashion, rather than to litigate hundreds of individual actions based upon the same pattern of conduct."  *Id.* at 1266.  Further, the fact of settlement eliminates any potential difficulties in managing the trial of this action as a class action.  *Wright v. Linkus Enters., Inc*., 259 F.R.D. 468, 474 (E.D. Cal. 2009) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.")).

## V.     PLAINTIFF VEGA SHOULD BE APPOINTED SETTLEMENT CLASS REPRESENTATIVE AND CLASS COUNSEL SHOULD BE APPOINTED FOR THE SETTLEMENT CLASS

The Court is requested to designate Plaintiff Vega as Class Representative for the Settlement Class.  As discussed above, Plaintiff will fairly and adequately protect the interests of the Settlement Class.  Additionally, Rule 23(g)(1) requires the Court to appoint class counsel to represent the interests of the Settlement Class.  *See In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 355 (N.D. Cal. 2005).  Ty Frankel and Patricia Syverson of Frankel Syverson PLLC are experienced and well equipped to vigorously, competently and efficiently represent the proposed Settlement Class.  *See* https://www.frankelsyverson.com/about.  Accordingly, the Court is requested to appoint Ty Frankel and Patricia Syverson of Frankel Syverson PLLC as Settlement Class Counsel for the Rule 23 Settlement Class.

## VI.   FLSA AND RULE 23 SETTLEMENTS REQUIRE COURT APPROVAL

As a general matter, "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Serv. Com'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).  Settlements, of class actions in particular, are strongly favored.  *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 2004) (noting "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned").  By their very nature, because of the uncertainties of outcome, difficulties of proof, and lengthy duration, class actions readily lend themselves to compromise.  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) (public interest in settling litigation is "particularly true in class action suits…which frequently present serious problems of management and expense").  This policy of encouraging settlement equally applies in the context of FLSA litigation when there are bona fide issues in dispute and employees are represented by "an attorney who can protect their rights under the statute." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982).

With regard to the FLSA Settlement, judicial approval is required because employees cannot otherwise waive claims for unpaid wages under the FLSA without court approval. As the Eleventh Circuit Court of Appeals explained in *Lynn's Food Stores,* 679 F.2d at 1353, in the "context of suits brought directly against their employer under Section 216(b) to recover back wages for FLSA violations," the parties must present any proposed settlement to the district court, which "may enter a stipulated judgment after scrutinizing the settlement for fairness."   Accordingly, where an employer and an employee have negotiated a settlement agreement, an employer will be relieved of liability from future lawsuits only if the agreement is supervised by the Department of Labor ("DOL") or approved by a federal court. *See Thornton v. Solutionone Cleaning Concepts, Inc.*, 2007 WL 210586, at *3 (E.D. Cal. Jan. 26, 2007).  The Ninth Circuit has implicitly indicated that it would follow the Eleventh Circuit's decision in *Lynn's Food Stores*.  *See Dent v. Cox Commc'ns Las Vegas, Inc.*, 502 F.3d 1141, 1144 (9th Cir. 2007).  The Arizona District Court has also relied on *Lynn's Food Stores*.  *See Hand v. Dionex Corp.*, 2007 WL 3383601, at *1 (D. Ariz. Nov. 9,

2007).[8]

Similarly, with regard to the Rule 23 Settlement, Rule 23(e) requires Court approval of settlements and sets forth a "two-step process in which the court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). At the preliminary approval stage, the Court need only "make a preliminary determination of the fairness, reasonableness and adequacy of the settlement" so that notice of the settlement may be given to the Settlement Class and a fairness hearing may be scheduled to make a final determination regarding the fairness of the settlement. *See Newberg on Class Actions*, §11.25; David F. Herr, *Annotated Manual for Complex Litigation* ("*Manual*") §21.632 (4th ed. 2008). "Because class members will subsequently receive notice and have an opportunity to be heard," the court "need not review the settlement in detail at this juncture" but only needs to conduct a *prima facie* review of the relief provided by the Settlement Agreement to determine whether notice should be sent to the Settlement Class Members. *In re M.L. Stern Overtime Litig.*, 2009 WL 995864, at *3 (S.D. Cal. Apr. 13, 2009). "[P]reliminary approval is appropriate so long as the proposed settlement falls 'within the range of possible judicial approval.'" *Id.* (quoting *Newberg on Class Actions*, §11.25 (4th ed. 2002)); *see also Manual for Complex Litigation* (4th ed. 2009) §§ 21.632, 21.633.

In both situations, however, the Court's review is intended to evaluate whether the settlement is not collusive and whether "taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice,* 688 F.2d at 625; *see also Hanlon,* 150 F.3d at 1026; *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). The issue is not whether the settlement could have been better in some fashion, but whether it is fair:

---

[8] In *Hand*, the District Court addressed the issue when approving an FLSA settlement. *See* 2007 WL 3383601, at *1. The parties asked for an Order to be entered specifically approving their settlement agreement. The Court approved the settlement agreement, noting that typically, "the Court does not rule on private settlement negotiated between parties. But because Plaintiffs filed a FLSA action against Defendant, the parties must seek approval of their stipulated settlement in order to ensure enforceability of the Settlement Agreement." *Id.* (citing *Lynn's Food Stores*, 679 F.2d at 1352-53 and *Thornton*, 2007 WL 210586).

"Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027.  Further, in a FLSA case in particular, it is important to consider the policy purposes of the FLSA in determining whether the settlement is fair. *See Goudie v. Cable Commc'ns, Inc.,* 2009 WL 88336, *1 (D. Or. Jan. 12, 2009) ("In reviewing a private FLSA settlement, the court's obligation is not to act as caretaker but as gatekeeper; it must ensure that private FLSA settlements are appropriate given the FLSA's purposes and that such settlements do not undermine the Act's purposes."); *Collins v. Sanderson Farms, Inc.,* 568 F.Supp.2d 714, 717 (E.D. La. July 9, 2008) ("The Court's role [in reviewing a FLSA settlement] is in many ways comparable to, but in others quite distinguishable from, that of a court in a settlement of a class action brought pursuant to [Rule 23], and derives from the special character of the substantive labor rights involved.").

Here, Plaintiff and Class Counsel seek approval of a hybrid Settlement including damages for the FLSA Opt-In Plaintiffs and the Rule 23 Class Members.  District courts have allowed hybrid FLSA/Rule 23 actions to proceed to settlement, particularly where, like here, the claims and recovery are treated separately.  *See, e.g., Curtis v. Genesis Engineering Sols., Inc.,* 2022 WL 1062024 (D. Md. Apr. 8, 2022) (approving hybrid FLSA and Rule 23 settlement class); *Thompson v. Costco Wholesale Corp.*, 2017 WL 697895, at *8 (S.D. Cal. Feb. 22, 2017) (noting that "courts that have approved settlements releasing both FLSA and Rule 23 claims generally do so only when the parties expressly allocate settlement payments to FLSA claims*"*).

## VII.   THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

The Ninth Circuit has articulated six factors to use in evaluating the fairness of a settlement at the preliminary approval stage:  (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the consideration offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; and (6) the experience and views of counsel.  *Jack v. Hartford Fire Ins. Co.*, 2011 WL 4899942, at *4 (S.D. Cal. Oct. 13,

2011), citing *Molski v. Gleich*, 318 F.3d 937, 954 (9th Cir. 2003); *Hanlon*, 150 F.3d at 1026 (same).  In reviewing an FLSA collective action settlement, courts generally apply the same standard used in reviewing a settlement of a Rule 23 class action.  *See*, *e.g.*, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998); *Su v. Elec. Arts, Inc.*, 2006 WL 4792780, at *3 (M.D. Fla. 2006) ("In determining whether the settlement is a fair and reasonable resolution, the Court adopts the factors used in approving the settlement of class actions …").  However, in FLSA settlements, the court may also consider: the range of possible recovery; the scope of any release provision; and the possibility of fraud or collusion.  *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F.Supp.3d 1164, 1173 (S.D. Cal. 2016).  As shown below, a review of the relevant factors demonstrates that this proposed Settlement satisfies the standards for fairness, reasonableness, and adequacy, placing it squarely within the range of possible approval.

### A. The Strengths of Plaintiff's Case and Risks Inherent in Continued Litigation Favor Preliminary Approval

A court's task is not to reach any conclusions as to the merits of the plaintiffs' case, nor should the court substitute its opinion for that of Class Counsel and Plaintiff.  Indeed, as the Ninth Circuit explained:

> Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.  The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.

*Officers for Justice*, 688 F.2d at 625 (internal citations omitted).[9]  Settlements, however, resolve the inherent uncertainty on the merits, and are strongly favored by courts, particularly in class actions.  *See Van Bronkhorst*, 529 F.2d at 950; *U.S. v. McInnes*, 556 F.2d 436, 441 (9th Cir. 1977).

Here, Plaintiff and Class Counsel have carefully assessed the probability of ultimate success on the merits vis-à-vis the risks of establishing liability and damages.  While Plaintiff

---

[9] The Court may not modify the proposed settlement but must approve or disapprove of the proposed settlement "as a whole" in relation to all of those covered by it.  *Evans v. Jeff D.*, 475 U.S. 717, 727 (1986).

believes his case is strong – and negotiated the Settlement on that basis – a finding of liability is never assured.  This is especially true in light of the fact that AMS was zealously represented by counsel with experience specifically related to litigating FLSA, AWA, and AMWA claims.

Moreover, this case presented bona fide disputes over numerous legal and factual issues, including, but not limited to: whether the Helpers were not compensated for all overtime and straight time worked; whether AMS's flexible "pay plan" was appropriate under the AWS and AWMS; whether there were applicable exemptions to FLSA damages; whether Vega could prove the amount of damages owed with reasonable specificity; whether a two or three year limitation period would apply; and whether liquidated damages are appropriate.  As such, substantial risks and uncertainties were present from the outset of this case that made it far from certain that any relief for the Helpers would be obtained.  Accordingly, although Class Counsel were confident that they would develop a convincing case, they were also aware that litigation outcomes are unpredictable.  *See Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 285 (D. Colo. 1997) ("[T]he one constant about litigation . . . is that the ultimate jury result is uncertain, unknown and unpredictable.").

**B.      The Risk, Complexity, Expense and Duration of the Litigation Favor Preliminary Approval**

Here, litigating this action through trial would certainly be expensive and time-consuming.  AMS's resistance to Plaintiff's claims has been considerable.  The Parties have vigorously disagreed with each other on numerous key factual and legal issues, including, *inter alia*, the issues identified in Section VII(A) above.  Should litigation continue, the Parties would be in the position of completing extensive discovery, including opt-in discovery, as well as likely extensive briefing such as a motion for decertification and/or a motion for summary judgment, which would potentially result in an appeal.  The additional discovery and inevitable motion practice could easily extend the litigation for more than a year.  And, a trial on the action could last several weeks and any trial verdict would likely face a vigorous appeal.  Absent the settlement, it is uncertain when this litigation would end

even if Plaintiff was successful at trial.  In such circumstances, Plaintiff would likely obtain no recovery for years.  The fact that the Settlement, if approved and becomes effective, will eliminate such expenses, delays and uncertainties, favors its approval.  *See Officers for Justice*, 688 F.2d at 629 (finding that the immediate and tangible benefits to the class members from the settlement outweighed any speculative judgment that may be obtained after trial and appeal).  Accordingly, by reaching this Settlement, the Parties have avoided further protracted litigation and established a means for a prompt resolution of the Plaintiff's claims against AMS, while providing meaningful relief and timely benefits.

**C.    The Substantial Relief Provided by the Settlement Agreement Favors Preliminary Approval**

The Settlement amount viewed in light of the range of possible recovery also supports the reasonableness of this Settlement.  In assessing this factor, "the Court is to 'determine the value of the settlement in light of the potential for recovery.'"  *Police Officers v. City of San Antonio*, 188 F.R.D. 433, 460 (W.D. Tex. 1999).  But in making this comparison, "the trial judge ought not try the case in the settlement hearings."  *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).  And, it should not "be forgotten that compromise is the essence of a settlement."  *Id.*  Indeed, as explained in *Oppenlander v. Standard Oil Co.*:

> The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.  In this respect, "[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush."

64 F.R.D. 597, 624 (D. Colo. 1974) (*quoted in Police Officers*, 188 F.R.D. at 458-59); *see also Camp v. Progressive Corp.*, 2004 WL 2149079, at *5 (E.D. La. Sept. 23, 2004) (approving FLSA collective action settlement, noting that "the court is aware, as the parties must also be, that a 'settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution'") (citation omitted).  Further, the settlement amount need not represent a specific percentage of the maximum possible recovery. *See Selk,* 159 F.Supp.3d at 1174 (citing *Nat'l Rural Telecomm's Coop.,* 221 F.R.D. at 527 ("[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of

1   the potential recovery that might be available to the class members at trial.”))

2          Here, AMS has agreed to a Settlement that provides Plaintiff and the Helpers with the

3   type of relief intended under the FLSA/AWA/AMWA and sought in this litigation:

4   compensation for alleged unpaid overtime/unpaid wages.  And, the Settlement payments

5   directly relate to the factors that would be relevant to compensation if awarded.  *See Barrera*

6   *v. US Airways Grp. Inc.,* 2014 WL 12639342, at *2 (D. Ariz. May 23, 2014); *In re Sepracor*

7   *Inc. Fair Labor Standards Act (FLSA) Litig.,* 2009 WL 3253947, at *2 (D. Ariz. Oct. 8,

8   2009).  Accordingly, the Settlement is fair and reasonable because, if approved, Plaintiff,

9   FLSA Opt-Ins and Rule 23 Class Members will have recovered the relief they sought through

10  this lawsuit.  *See*, *e.g.*, *Cotton*, 559 F.2d at 1330 (“The relief sought in the complaint may be

11  helpful to establish a benchmark by which to compare the settlement terms.”); *Access Now,*

12  *Inc. v. Cunard Line Ltd., Co*., 2001 WL 1622015, at *1 (S.D. Fla. Oct. 31, 2001) (“Plaintiffs

13  have obtained much of the relief they sought in their complaint, weighing heavily in favor

14  of the settlement’s approval.”).

15         Moreover, the proposed Settlement provides monetary payments for back wages for

16  each Helper who allegedly worked within the broadest statute of limitations – three years –

17  despite that in all likelihood at trial the recovery could have been significantly reduced.  For

18  example, AMS argued that a two year (versus three year) statute of limitations should apply

19  to Vega’s claims under Federal and Arizona law because it claims there was no evidence of

20  wilfulness. (Doc. 97).  Even if AMS was successful on just this one issue, it is highly

21  probable that many of the Helpers’ claims would fall outside the limitations period and others

22  would have their damages significantly reduced.

23         The average payment per Helper is $295.34, with the individual settlement payments

24  per Helper ranging from $36.15 to $5,305.75 and the settlement amount for Plaintiff Vega

25  is $1,147.80.  This is within the range of reasonableness for an FLSA collective action and

26  Rule 23 class action settlements.  *Compare, e.g., Camp*, 2004 WL 2149079, at *6-7

27  (upholding FLSA collective action settlement where average settlement amount was $273

28  for each member of one class and $503 for each member of another class); *Su,* 2006 WL

4792780, at *2 (approving FLSA settlement where payments to the plaintiffs and class members ranged from $619 to $16,037); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 179-80 (W.D.N.Y. 2005) (approving FLSA settlement of forty employees where the average settlement amount for each class member was $1,875); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) (approving Rule 23 wage and hour class settlement resulting in an average settlement payment of $450 per class member).

Further, Class Counsel believe that the recovery each Helper will receive is well within the range of reasonableness when comparing the settlement amount to the potential recovery Plaintiff and the Helpers could have obtained at trial.  For settlement purposes, the Helpers' compensation has been calculated using a per shift estimate of off the clock work performed for every shift throughout the entire time the Helpers were employed by AMS according to the payroll records produced in this case.  The damages amounts provided by the Settlement for each Helper were reached assuming recovery for approximately 20-40% of the time they worked but were not properly compensated for based on what Class Counsel roughly estimated would be their maximum recovery if fully successful at trial based on the discovery in the case and compared to allegations in the Complaint and Vega's declaration. *See* Doc. 1, at ¶ 54; Doc. 47-4 at ¶ 14.[10]  This range clearly indicates that the recovery to Opt-In Plaintiffs for overtime back wages as a result of this Settlement is reasonable and, thus, approval of the Settlement is warranted.  *See, e.g., Shoults v. G4S Secure Sols. (USA) Inc.*, Case No. 2:19-cv-02408-GMS (D. Ariz. 2022) (approving FLSA settlement as fair where the settlement fund represented between 13%-20% or 26%-40% of the maximum possible recovery depending on damages methodology); *Quintana v. HealthPlanOne LLC*, 2019 WL 3342339, at *3 (D. Ariz. July 25, 2019) (finding FLSA settlement for "one-half or

---

[10] Specifically, Vega testified in his declaration that his "typical day resulted in about two and a half hours of work" performed off the clock and that he recalled "having to work as many as five hours off the clock on a given day."  Doc. 47-4 at ¶ 14.  Discovery of the Opt-In Plaintiffs to date supported that Vega's estimate of off the clock time was reasonable.  Comparing Vega's 2.5-5 hours of estimated unpaid off the clock time per day to the 1.0 hour of off the clock time used to calculate damages for purposes of the Settlement, that results in a recovery of approximately 20-40% of the amount that could have possibly been recovered had this case gone to trial.

one-third of the total possible recovery" to be reasonable); *Selk,* 159 F. Supp. 3d at 1175 (finding range of 26% to 50% of the "best possible recovery" at trial for FLSA collective claims (as compared to the recovery the plaintiff originally sought which had been "narrowed considerably" over the course of the litigation due to discovery and dismissal of plaintiff's state law claim) was "in the range of reasonableness"); *Millan,* 2016 WL 3077710, at *7 (finding disbursement of "approximately one-quarter of the predicted maximum recovery amount" for FLSA and Rule 23 claims was "well within the acceptable range"); *Bellinghausen,* 306 F.R.D. at 256 (finding a Rule 23 wage and hour class settlement fair where the settlement fund represented between 9% and 27% of the total potential recovery); *Jones v. Agilysys, Inc.*, 2014 WL 2090034 (N.D. Cal. May 19, 2014) (finding a FLSA settlement that constituted between 30% to 60% of recoverable damages to be a "tangible monetary benefit" for the class members); *Alleyne v. Time Moving & Storage Inc.,* 264 F.R.D. 41, 57–58 (E.D.N.Y. 2010) (Rule 23 wage and hour settlement fund within range of reasonableness when it represented approximately 13% to 17% of the maximum possible recovery); *Knight v. Red Door Salons, Inc.*, 2009 WL 248367, *5 (N.D. Cal. Feb. 2, 2009) (recovery of 50% of possible damages in a Rule 23 wage and hour class action was "substantial achievement on behalf of the class"); *Glass v. UBS Fin. Serv., Inc.*, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007), *aff'd* 331 Fed.Appx. 452 (9th Cir. 2009) (finding a Rule 23 wage and hour class settlement in the range of 25 to 35% of claimed damages fair and reasonable in light of the uncertainties involved in the litigation).

Accordingly, the Settlement is fair and reasonable because, if approved, the Helpers will recover a meaningful portion of the relief they sought through this lawsuit.  *See*, *e.g.*, *Cotton*, 559 F.2d at 1330 ("The relief sought in the complaint may be helpful to establish a benchmark by which to compare the settlement terms."); *Access Now, Inc.,* 2001 WL 1622015, at *1 ("Plaintiffs have obtained much of the relief they sought in their complaint, weighing heavily in favor of the settlement's approval.").

### D. The Stage of the Proceedings Favors Preliminary Approval

As explained above, this case was not in its infancy when settlement was reached.

1   For three years, the Parties had been actively investigating Plaintiff's claims via factual and

2   legal research of their claims and defenses as well as formal discovery, including written

3   discovery from all the Parties as well as the FLSA Opt-In Plaintiffs), four depositions,

4   including that of Vega, and three of AMS's current and former managers, and collectively

5   exchanged and reviewed thousands of pages of documents.  Consequently, the Parties had a

6   solid base of information upon which to negotiate this Settlement.  *See*, *e.g.*, *Frank*, 228

7   F.R.D. at 179, 185 (approving proposed settlement where the court found that "the parties

8   [had] engaged in extensive discovery to identify the potential class members and to calculate

9   the number of overtime hours worked and the relevant rates of pay," which included

10  reviewing "several hundred pages of records").

11          **E.      Scope of the Release is Fair and Reasonable**

12          As explained above, the Settlement sets forth separate releases for the FLSA Opt-In

13  Class Members and the Rule 23 Class Members.  FLSA Opt-In Members will only be

14  releasing all claims for unpaid wages against All My Sons in the Lawsuit brought under the

15  FLSA through the date of entry of the Final Approval Order, which are alleged in Counts I

16  and II of the Complaint.  And Rule 23 Class Members who do not opt out of the Settlement

17  will only be releasing all claims for unpaid wages against All My Sons in the Lawsuit brought

18  under the Arizona Wage Statute through the date of entry of the Final Approval Order, which

19  are alleged in Counts III and IV of the Complaint.  *See* Section III(C), above.  Because these

20  release provisions generally track the wage and hour claims asserted in the lawsuit, the scope

21  of the releases does not weigh against the Settlement being fair and reasonable.  *See, e.g.,*

22  *Selk,* 159 F.Supp.3d at 1178.

23          **F.      The Experience and Views of Class Counsel**

24          In reviewing a class settlement, the Court should accord "great weight" to Class

25  Counsel's recommendations.  *See Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148-49 (8th

26  Cir. 1999); *Cotton*, 559 F.2d at 1330; *Police Officers*, 188 F.R.D. at 461.  Here, Class

27  Counsel are experienced class action, employment, wage and hour, and general litigation

28  attorneys.  Utilizing their experience, Class Counsel vigorously litigated this case for three

years and successfully negotiated an appropriate Settlement for the Helpers.  Class Counsel

submit that the proposed Settlement is in the Helpers' best interests.  This is especially true

in light of the fact that the Parties have agreed that Plaintiff will submit an application for an

Attorneys' Fee Award and Costs which will be decided separately from approval and

effectuation of the settlement thereby avoiding any delay in distributing settlement payments

to class members.

Beyond the substantial involvement and assistance of a qualified mediator and then a

Magistrate Judge, the experience of Class Counsel and AMS's Counsel as longstanding class

action attorneys, and the fair result reached confirm that the negotiations that led to the

settlement were arm's length, not collusive.  *See also Newberg on Class Actions*, at §11.41

(The initial presumption of fairness of a class settlement may be established by showing: (1)

that the settlement has been arrived at by arm's length bargaining; (2) that sufficient

discovery has been taken or investigation completed to enable counsel and the court to act

intelligently; and (3) that the proponents of the settlement are counsel experienced in similar

litigation.).

Accordingly, the Settlement is well within the "range of possible approval" and

should be preliminarily approved.  Section VII(C).  "If the preliminary evaluation of the

proposed settlement does not disclose grounds to doubt its fairness or other obvious

deficiencies … and appears to fall within the range of possible approval," the Court should

grant preliminary approval, direct notice and schedule a final fairness hearing.  *Manual for*

*Complex Litig.*, Third § 30.41, at 237 (1995).  Further, there is an initial presumption of

fairness because the Settlement is the product of arm's length negotiations conducted by

experienced counsel who are fully familiar with all aspects of class action litigation and with

the assistance of a mediator.  *Rodriguez*, 563 F.3d at 965 ("We put a good deal of stock in

the product of an arms-length, non-collusive, negotiated resolution."); *In re Gen. Motors,* 55

F.3d at 785 ("This preliminary determination establishes an initial presumption of fairness

when the court finds that: (1) the negotiations occurred at arm's length…. [and] (3) the

proponents of the settlement are experienced in similar litigation. . . .").

Based upon the foregoing, Plaintiff respectfully submits that the proposed Settlement "falls within the range of what ultimately might be approved as fair, reasonable, and adequate" and that preliminary approval should be granted.

## VIII.  THE PROPOSED SERVICE AWARD SHOULD BE APPROVED AS FAIR AND REASONABLE

Based on Plaintiff Vega's active participation in this litigation since the summer of 2020, including attending two full-day, in person mediation sessions and spending time preparing for and participating in deposition, the requested Service Award for Vega is fair and reasonable.  The Ninth Circuit has recognized that service awards are "fairly typical" and have an important function as they "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59.  Service awards are committed to the sound discretion of the trial court and should be awarded based upon the court's consideration of, *inter alia*, the amount of time and effort spent on the litigation, the duration of the litigation and the degree of personal gain obtained as a result of the litigation.  *See Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995); *see also Smith v. CRST Van Expedited, Inc.*, 2013 WL 163293, at *6 (S.D. Cal. Jan. 14, 2013).  Furthermore, service awards are particularly appropriate in the context of employment class actions, where they help alleviate the "stigma upon future employment opportunities for having initiated an action against a former employer." *Campbell v. First Investors Corp.*, 2012 WL 5373423, at *8 (S.D. Ca. Oct. 29, 2012).  Service awards also provide more than just reimbursement for time; the service award is to also compensate for the fear of reprisal, real or perceived, which is particularly sensitive given the employment context of the case.  *Rodriguez,* 563 F.3d at 958-59 (explaining that awards "are intended to compensate class representatives for work done on behalf of a class, to make up for financial or reputational risk undertaken in bringing the action, and sometimes, to recognize their willingness to act as a private attorney

general."), *vacated on other grounds*, 688 F.3d 645, 660 (9th Cir. 2012).

In that spirit, the requested service award for Vega is in line with amounts awarded in comparable cases. *See*, *e.g.*, *Alvarez v. Direct Energy Bus. Mktg. LLC*, 2020 WL 1032800, at *1 (D. Ariz. Mar. 3, 2020) (approving, *inter alia*, $15,000 service award for named Plaintiff and $10,000 service award for Opt-In Plaintiff's "active involvement early in the case"); *Walsh v. CorePower Yoga LLC,* 2017 WL 4390168, at *13 (N.D. Cal. Oct. 3, 2017) (approving a $10,000 service award for plaintiff who produced documents, aided counsel's negotiation efforts, and took on reputational and future employment risk by filing suit); *In re: Easysaver Rewards Litig.*, 2016 WL 419048, at *5 (S.D. Cal. Aug. 9, 2016) (approving $10,000 and $15,000 incentive awards where plaintiffs were actively involved, including being deposed, subject to written discovery, and traveling to attend mandatory settlement conference); *Wilson v. Gateway, Inc.*, 2014 WL 12704846, at *7 (C.D. Cal. Oct. 6, 2014) (approving $10,000 incentive award, stating that: "Courts in the Ninth Circuit have granted service awards in varying amounts up to and past $10,000.") (citing *Fulford v. Logitech, Inc.*, 2010 U.S.Dist. LEXIS 144437, at *6 & n.1 (N.D. Cal. Mar. 5, 2010) (collecting cases awarding service fees between $5,000 and $40,000) and *Garner v. State Farm Mut. Auto. Ins. Co.,* 2010 U.S. Dist. LEXIS 49477, at *47 & n. 8 (N.D. Cal. Apr. 22, 2010) (finding service award of $20,000 was "well justified" given plaintiffs' efforts on behalf of the class and collecting cases awarding service awards of $20,000 and above)).  Indeed, AMS agreed to a service award in the amount of $10,000 for Vega.

## IX.    THE RULE 23 NOTICE PLAN SHOULD BE APPROVED AS IT SATISFIES DUE PROCESS

The threshold requirement concerning class notice is whether the means employed to distribute the notice was reasonably calculated to apprise the Class of the pendency of the action, of the proposed settlement and of the Settlement Class Members' rights to opt out or object. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 315 (1950).  The mechanics of the notice process are left to the discretion of the Court, subject only to the broad "reasonableness" standards imposed

1   by due process.  In this Circuit, it has long been the case that a notice of settlement will be

2   adjudged "satisfactory if it 'generally describes the terms of the settlement in sufficient detail

3   to alert those with adverse viewpoints to investigate and to come forward and be heard.'"

4   *Rodriguez*, 563 F.3d at 962 (quoting *Churchill Village, L.L.C. v. G.E.*, 361 F.3d 566, 575

5   (9th Cir. 2004)); *Hanlon*, 150 F.3d at 1025 (notice should provide each absent class member

6   with the opportunity to opt-out and individually pursue any remedies that might provide a

7   better opportunity for recovery).  The notice should also present information "neutrally,

8   simply, and understandably," including "describ[ing] the aggregate amount of the settlement

9   fund and the plan for allocation." *Rodriguez*, 563 F.3d at 962.

10          The Rule 23 Notice here is fully compliant with due process.  The Notice informs the

11   Settlement Class Members of their rights including: opt-out or exclude themselves from the

12   Settlement; that by doing nothing they will be bound by the terms of the Settlement

13   (including the scope of the release if the Settlement Class Member remains in the Settlement

14   Class); appear through their own counsel; object to the terms of the Settlement along with

15   the form that the objection must take; the deadlines for opt-out/exclusion or objection; the

16   date of the final fairness hearing; and the potential amount of Plaintiff's service award.  *See*

17   Settlement Agreement, at Ex. C, Form of Rule 23 Notice.  Notice will be sent by first-class

18   mail to all known mailing addresses of Class Members – approximately 430 class members.

19   If Class Notices are returned for insufficient address, the Settlement Administrator shall

20   conduct one skip trace and/or such other reasonable steps to ensure notice is provided to

21   Class Members.  Further, along with the Notice, the Settlement Administrator will provide

22   the Information Forms to all Class Members to fill out and return (if applicable).  *See*

23   Settlement Agreement, at Exs. A-B.  The Information Forms provide a means for Class

24   Members to update their contact information, provide tax withholding information and, if a

25   Class Member is deceased, provides the form for requesting a representative.  The Notice

26   will also be sent by email and Helpers will receive a text alert about the Settlement as well.

27   This is the same notice structure that was approved by the Court to inform the Helpers of

28

1    certification of the classes.[11]

2        Here, the Notice Plan properly meets the threshold requirements of due process and

3    should be approved.

4    **X.    CONCLUSION**

5        Based upon the foregoing, and because the proposed Settlement is fair, reasonable,

6    and sufficient to warrant that the Notice Plan be approved and a final fairness hearing be

7    held, Plaintiff Vega respectfully requests that the Court enter the preliminary approval order

8    that accompanies this motion and memorandum, as Settlement Agreement, at Ex. F.

9        DATED:  August 31, 2023.

**FRANKEL SYVERSON PLLC**
By _____*s/Ty D. Frankel*_____
Ty D. Frankel
2375 E. Camelback Road, Suite 600
Phoenix, Arizona 85016

**FRANKEL SYVERSON PLLC**
Patricia N. Syverson
9655 Granite Ridge Drive, Suite 200
San Diego, California 92123

*Attorneys for Plaintiff and the Class*

---

[11] The FLSA Opt-Ins will receive a notice along with their settlement checks that provides information about the Settlement, including the applicable release, the deadline for cashing their settlement check and explains that if their settlement check is not timely cashed, the settlement monies will be distributed *cy pres* to the National Institute for Workers' Rights. *See* Settlement Agreement, at Ex. D, Form of FLSA Notice.

- 24 -